IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–02461–CMA–KMT

CLYDE HARRIS,

    Plaintiff,

v.

OFFICER MICHAEL LUMBARD, Denver Police Dept.,
OFFICER LAURA FRANKLIN, Denver Police Dept.,
OFFICER NOEL IKEDO, Denver Police Dept., and
OFFICER JOHN DOE, Denver Police Dept.,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on Defendants' "Motion for Summary Judgment."

(Doc. No. 40, filed Nov. 2, 2013.)  For the following reasons, the court respectfully recommends

that Defendants' Motion be GRANTED.

### FACTUAL BACKGROUND

    The following factual background is undisputed, unless otherwise noted.  In his Amended

Complaint (Doc. No. 37, filed Oct. 18, 2012), Plaintiff alleges that Defendants used excessive

force to effectuate his arrest in June 2010.

    On June 26, 2010, at approximately 2:25 a.m., Defendant Lumbard, a police officer with

the Denver Police Department, observed Plaintiff in the 2300 block of Bruce Randolph Avenue,

in Denver, Colorado, riding a bicycle without a light. (Mot., Ex. 1, Declaration of Officer Michael Lumbard, ¶¶ 1-2 [Lumbard Decl.]).) Denver Revised Municipal Code provides that: "Every bicycle . . . when in use at night time, shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least five (500) feet to the front." (*Id.*, Ex. 2.)

Defendant Lumbard exited his patrol car and contacted Mr. Harris. (Lumbard Decl. ¶ 3.) After informing Plaintiff that he was required to have a light on his bicycle, Defendant Lumbard asked to see Plaintiff's identification. (*Id.*) Plaintiff stated that he did not have identification, but nevertheless provided Defendant Lumbard with his name and date of birth. (*Id.*) Defendant Lumbard returned to his patrol vehicle to do a routine clearance check on Plaintiff. (*Id.*)

While Defendant Lumbard was in his patrol car, Plaintiff began riding away on his bicycle. (*Id.* ¶ 4.) Although Defendant Lumbard ordered him to stop, Plaintiff nevertheless continued to flee. (*Id.*)

Defendant Lumbard followed Plaintiff in his patrol car for several blocks. (*Id.* ¶ 5.) In an alley in the 3400 block between Josephine and Columbine Streets, Defendant Lumbard saw Plaintiff jump off his bicycle, fall to the ground, and then get up and run on foot. (*Id.*) At that time, Defendant Lumbard exited his patrol car and chased Plaintiff on foot. (*Id.*)

Plaintiff subsequently fell to the ground in the yard of a residence under construction at 3411 Columbine Street. (*Id.* ¶ 6.) After reaching Plaintiff, Defendant Lumbard called on his radio for other officers to assist. (*Id.*) Defendant Franklin, also a Denver police officer, was on

routine patrol when she heard Defendant Lumbard's radio dispatch. (Mot., Ex. 3, Declaration of Officer Laura Franklin, ¶¶ 1-2 [Franklin Decl.]).)

Defendant Lumbard observed that Plaintiff was "agitated" and got on Plaintiff's back and tried to control his hands. (Lumbard Decl. ¶ 7.) Plaintiff stood up and threw Defendant Lumbard off of him. (*Id.*) Plaintiff then turned toward Defendant Lumbard, bladed his stance, balled his fists, and charged toward Defendant Lumbard. (*Id.* ¶ 8.)

In response, Defendant Lumbard used his Taser on Plaintiff, which cycled one time for five seconds. (*Id.* ¶ 9.) However, the Taser had no effect, as Plaintiff pulled the Taser probes from his abdomen and threw them to the ground. (*Id.*) Plaintiff then struck Defendant Lumbard with a closed fist on the right side of his head. (*Id.* ¶ 10.) The blow caused Defendant Lumbard to stumbled and suffer from blurred vision. (*Id.*) Plaintiff then ran away from Defendant Lumbard, who chased Plaintiff on foot into the street of the 3400 block of Columbine Street. (*Id.* ¶ 11.) Plaintiff turned around several times toward Defendant Lumbard in a fighting stance. (*Id.*) Each time Plaintiff turned around in this manner, Defendant Lumbard contacted Plaintiff with his Taser in stun mood; however, the Taser again had no effect on Plaintiff. (*Id.*)

When Defendant Franklin arrived on the scene, Defendant Lumbard and Plaintiff were standing on the sidewalk on the north side of the 2500 block of Bruce Randolph Avenue. (Franklin Decl. ¶ 3.) Defendant Franklin observed that Defendant Lumbard was unsteady on his feet. (*Id.*)

Defendant Lumbard gave Plaintiff loud verbal commands to get on the ground. (*Id.* ¶ 4.) However, Plaintiff ignored these commands, stepped away from Defendant Lumbard, held a lighter to his mouth, and smoked from what appeared to be a crack pipe. (*Id.*)

Defendant Franklin then ordered Plaintiff to get on the ground while pointing her pistol at him. (*Id.* ¶ 5.) Plaintiff backed up to a brick wall that was behind him, and slid to a seated position, stating "Just shoot me." (*Id.* ¶ 6.)

Defendants Franklin and Lumbard approached Plaintiff. (*Id.* ¶ 7.) Defendant Franklin holstered her weapon, grabbed Plaintiff's right hand and attempted to place him in a twist lock to gain control of him. (*Id.*) Both officers attempted to gain control of Plaintiff's hands. (Lumbard Decl. ¶ 15.) However, Plaintiff balled his fists and tensed his muscles, which prevent the officers from gaining control of him. (Lumbard Decl. ¶ 16; Franklin Decl. ¶ 8.) Plaintiff then pulled Defendant Lumbard down, causing all of them to fall to the ground. (*Id.*)

Plaintiff continued to fight with the officers by throwing his elbows and kicking while he was on the ground. (Lumbard Decl. ¶ 17; Franklin Decl. ¶ 9.) Defendant Lumbard struck Plaintiff several times using his fists and knee strikes to the torso. (Lumbard Decl. ¶ 18.) Plaintiff continued to struggle with the officers and repeatedly said "Just fucking kill me." (*Id.*)

During the struggle Plaintiff received a laceration over his eye. (*Id.*) Although Plaintiff has alleged that this injury resulted from Defendant John Doe stomping his head into the pavement (Am. Compl. at 8), both Defendant Lumbard and Defendant Franklin submit that Plaintiff simply "hit his head on the ground." (Lumbard Decl. ¶ 18; Franklin Decl. ¶10.)

Defendant Franklin attempted to gain control of Plaintiff by placing his left arm in a twist lock; however Plaintiff continued to resist by tensing his muscles and pulling his arms underneath his body. (Franklin Decl. ¶ 11.) Defendant Franklin then placed her arm in between Plaintiff's arm and rib cage in an attempt to pull Plaintiff's arm from beneath his body. (*Id.*)

Other officers arrived on the scene and assisted in taking Plaintiff into custody by controlling his head, arms, and legs, and placing him in handcuffs. (Lumbard Decl. ¶ 19; Franklin Decl. ¶ 12.) Defendant Lumbard called for an ambulance for Plaintiff. ( Lumbard Decl. ¶ 20.) When it arrived, Plaintiff was placed in the ambulance and was transported to Denver Health Medical Center ("Denver Health"). (*See id.*; Mot., Ex. 4.)

The paramedic report states that Plaintiff had a laceration to his head/face with a marble sized hematoma. (Mot.*,* Ex. 4.) Other than that laceration on his head and the fact that the officers used a Taser on him, Plaintiff did not make any other complaints to the paramedic. (*See id.*)

Later on the morning of June 26, 2010, Defendant Ikeda,[1] a Denver Police Detective, was assigned as the lead investigator concerning Plaintiff's arrest for assault on Defendant Lumbard. (Mot, Ex. 5, Declaration of Officer Noel Ikeda, ¶¶ 1-2 [Ikeda Decl.].) Defendant Ikeda was not on the scene of Plaintiff's arrest and thus did not use any force or have any role in taking Plaintiff into custody. (*Id.* ¶ 9.)

---

[1] Although spelled "Ikedo" in the caption and body of Plaintiff's Amended Complaint, this defendant's last name is correctly spelled "Ikeda." (*See* Ikeda Decl.)

5

After Defendant Ikeda was informed that Plaintiff was at Denver Health on a police hold, he proceeded to Denver Health with Denver Police Detective Eric Gray and met with Plaintiff. (*Id.* ¶ 3.) Defendant Ikeda introduced himself to Mr. Harris and provided him with a written and oral Miranda advisement. (*Id.* ¶ 4.) Plaintiff waived his Miranda rights and signed the written advisement. (*Id.*)

Plaintiff then gave an audio-recorded statement to Defendant Ikeda. (*Id.*) Plaintiff said that an officer stopped him, and because he knew he had a warrant for violating his parole, he fled on his bicycle. (*Id.* ¶ 5.) Plaintiff admitted to Defendant Ikeda that he resisted arrest and that the police officer used his Taser on him without effect. (*Id.* ¶ 6.) Plaintiff bragged that he stood up when the police officer was on his back and that the officer could not hit him. (*Id.* ¶ 7.) Plaintiff further admitted that he had a crack pipe in his hand and that he had smoked crack before his arrest. (*Id.* ¶ 8.)

On June 28, 2010, Defendant Ikeda met with a Denver Deputy District Attorney, who accepted the case against Plaintiff for filing. (*Id.* ¶ 11.) Plaintiff was ultimately charged with two felony counts of assault on a peace officer, in violation of Colo. Rev. Stat. § 18-3-203(1)(c) and (1)(f), and one misdemeanor count of resisting arrest, in violation of Colo. Rev. St. § 18-8-103. (Mot., Ex. 6 at 4, 34-36, 50-51.) On January 6, 2011, pursuant to a plea agreement, Plaintiff pled guilty to an added felony count of attempted second degree assault on a peace officer, in violation of Colo. Rev. Stat. § 18-3-203(1)(c). (*Id.* at 14.) On February 18, 2011, Plaintiff was sentenced to four years in the Colorado Department of Corrections with two years mandatory parole. (*Id.*)

**PROCEDURAL HISTORY**

Plaintiff's Amended Prisoner Complaint, filed on October 10, 2012, asserts four claims for relief pursuant to 42 U.S.C. § 1983. (*See* Am. Compl.). Plaintiff's first claim alleges, in pertinent part, that Defendant Lumbard "ordered the Plaintiff to get on the ground and after doing so . . . began pulling Plaintiff's arm in [an] upward position for over Thirty (30) minutes causing the Plaintiff severe pain in [his] lower back." (*Id.* at 5.) Plaintiff's second claim alleges that Defendant Franklin "held her service weapon on the Plaintiff and refused to intervene in the actions which caused Plaintiff's injuries." (*Id.* at 6.) Plaintiff's third claim alleges that Defendant Ikeda "had Plaintiff's right leg in shackles and was pulling Plaintiff's leg upward causing nerve damage in Plaintiff's foot." (*Id.* at 7.) Finally, Plaintiff fourth claim alleges that Defendant John Doe "stomped on the Plaintiff's head severly [sic] into the pavement causing the skin to separate from Plaintiff's head and causing injury to Plaintiff's eye, requiring the Plaintiff to receive stiches [sic] to the eye area." (*Id.* at 8.)

Defendant's Motion for Summary Judgment was filed on November 2, 2012. (*See* Mot.) Pursuant to D.C.COLO.LCivR 7.1C and Fed. R. Civ. P. 6(d), Plaintiff had until November 26, 2013 to file a response. No response was by or at any time after that date. Accordingly, this matter is ripe for the court's review and recommendation.

**LEGAL STANDARDS**

*A.     Summary Judgment Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts

must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### B.     *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden." *Id.* Plaintiff first must establish that the facts, taken in the light most favorable to him, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If Plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id.* This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id.* "[T]he relevant, dispositive inquiry . . . is whether it

would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.* at 236. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id.*

## ANALYSIS

As a threshold matter, although Plaintiff's Amended Complaint invokes the Fourth, Fifth, Eighth, and Fourteenth Amendments in support of each of his claims (Am. Compl. 5-8), the court does not and cannot construe Plaintiff's Amended Complaint to assert claims under either the Fifth or Eighth Amendment. First, the Eighth Amendment does not apply because Plaintiff's claims relate solely to the circumstances surrounding his arrest, and the Eighth Amendment is implicated only after conviction and sentencing. *Graham v. Connor,* 490 U.S. 386, 392 n.6 (1989) (citing *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977)). Second, the Fifth Amendment does not and cannot apply because Plaintiff's claims relate solely to the actions of local police officers. *See Koessel v. Sublette Cnty. Sheriff's Dep't,* 717 F.3d 736, 748 n.2 (10th Cir. 2013) (The Due Process Clause of the Fifth Amendment applies only to actions by the

federal government and, moreover, there can be no Fifth Amendment claim under § 1983 because the statute imposes liability only for actions taken under state law).

Ultimately, the court construes Plaintiff's Complaint to assert claims for excessive force in violation of the Fourth Amendment, which is incorporated against the states by the Fourteenth Amendment, and a claim for failure to intervene to prevent the use of excessive force. *Graham,* 490 U.S. at 395 (where an excessive force claim arises in the context of an arrest, it is properly treated as one invoking the protections of the Fourth Amendment); *United States v. Rodriguez-Rodriguez,* 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (citing *Mapp v. Ohio,* 367 U.S. 643 (1961)) ("[T]he Fourth Amendment applies against state law enforcement officials as incorporated through the Due Process Clause of the Fourteenth Amendment."). To the extent that Plaintiff sought to assert any other claims, he has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8. *Nasious v. Two Unknown* B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.").

### A.   *Excessive Force*

Defendants argue that they are entitled to qualified immunity and therefore summary judgment from Plaintiff's claims for excessive force. The court agrees.

In the context of an arrest, "to establish a constitutional violation, the plaintiff must demonstrate the force used was objectively unreasonable." *Estate of Larsen ex rel. Sturdivan v. Murr,* 511 F. 3d 1255, 1259 (10th Cir. 2008). "In determining whether a use of force is

11

unreasonable under the Fourth Amendment, [the court] balance[s] the nature and quality of the encroachment on the individual's Fourth Amendment interests against the government's countervailing interests." *Lundstrom v. Romero,* 616 F.3d 1108, 1126 (10th Cir. 2010). The " 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396; *see also Sturidivan,* 511 F.3d at 1259. "Moreover, because 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessarily in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective.' " *Sturdivan,* 511 F.3d at 1259-60 (quoting *Saucier,* 533 U.S. at 205). The court "consult[s] three non-exclusive factors to determine whether an officer's use of force is reasonable:  (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of officers or others, and (3) whether the suspect is actively resisting arrest or evading arrest by flight. *Henry v. Storey,* 658 F.3d 1235, 1239 (10th Cir. 2011) (citing *Lundstrom,* 616 F.3d at 1126).

The court finds that Plaintiff has failed to established that the facts, taken in a light most favorable to him, show that Defendants' violated his Fourth Amendment rights. *Saucier*, 533 U.S. at 201. As to Plaintiff's claim against Defendant Ikeda, contrary to Plaintiff's allegations, there is no evidence in the record to suggest Defendant Ikeda used any, let alone excessive, force on Plaintiff. Rather, according to the undisputed facts, Defendant Ikeda only contacted Plaintiff after he had been detained and transported to Denver Health, and did not subject Plaintiff to any

force whatsoever. (Ikeda Decl. ¶¶ 3-9.) Thus, Plaintiff's excessive force claim against Defendant Ikeda fails.

Similarly, there is no evidence in the record to support Plaintiff's allegations that, after ordering him "to get on the ground," Defendant Lumbard "pull[ed] Plaintiff's arm in an upward position for over thirty (30) minutes." (Am. Compl. at 5.) Likewise, in light of the fact that Plaintiff was an adult suspected of committing a crime, the sole fact that Defendant Franklin "held her service weapon on the plaintiff" (Am. Comp. at 6) is insufficient to establish a claim for excessive force. *See Henry,* 658 F.3d at 1240-41.

Further, even assuming Plaintiff seeks to challenges the totality of Defendants Lumbard's and Franklin's conduct, the court finds on the undisputed facts that their actions were objectively reasonable. With respect to the first factor, although the original crime allegedly committed by Plaintiff—riding a bicycle without a light—was relatively minor and certainly non-violent, Plaintiff subsequently committed two considerably more severe crimes by fleeing on his bicycle and striking Defendant Lumbard in the head—the latter, of course, being a violent crime. Colo. Rev. Stat. §§ 18-3-203(1)(c), 18-8-103. Indeed, Plaintiff ultimately pled guilty to second degree assault on a peace officer. (Mot., Ex. 6 at 14.)

With respect to the remaining factors, the court finds that each and every time that Defendants Lumbard and Franklin employed force against Plaintiff, he presented either an immediate risk to officer safety or was actively resisting or evading arrest. First, Defendant Lumbard jumped on Plaintiff's back and attempted to restrain Plaintiff's hands only after Plaintiff had fled the scene of the initial contact and had been ordered to stop. (Lumbard Decl.

13

¶¶ 4-7.) Second, Defendant Lumbard only deployed his Taser when that initial attempt to restrain Plaintiff was unsuccessful—i.e., after Plaintiff stood up and threw Defendant Lumbard from his back—and after Plaintiff had turned toward him, assumed a bladed stance, balled his fists, and then charged. (*Id.* ¶¶ 7-9.) *See Hinton v. City of Elwood,* 997 F.2d 774, 777 (10th Cir. 1993) (holding that it is not excessive force for officers to use an "electrical stun gun" on a man resisting arrest).

However, because Defendant Lumbard's attempt to stun Plaintiff with his Taser was unsuccessful, Plaintiff was able to strike Defendant Lumbard with a closed first and run away. (Lumbard Decl. ¶¶ 9-11.) In light of this attack, it was reasonable for Defendant Lumbard to again deploy his Taser when Plaintiff turned around several times towards him in a fighting stance. (*Id.* ¶ 11.)

Ultimately, Defendant Franklin was able to order Plaintiff to the ground by displaying her pistol. (Franklin Decl. ¶¶ 5-6.) However, Plaintiff continued to resist efforts to restrain him by balling his fists and tensing his muscles, and imposed a physical threat to the officers' safety by throwing his elbows and kicking while he was on the ground. (*Id.* ¶¶ 8-9.) Accordingly, in order to restrain Plaintiff, the court finds that it was reasonable for (1) Defendant Lumbard to strike Plaintiff several times using his fists and knee strikes to the torso, and (2) Defendant Franklin to place Plaintiff's arm in a twist lock and to attempt to pull Plaintiff's arm from beneath his body. (*Id.* ¶ 8; Lumbard Decl. ¶ 18.)

Even considering the facts in a light most favorable to Plaintiff, the court finds that each display of force resorted to by Defendants Lumbard and Franklin was reasonable and

proportionate to either Plaintiff's (1) threatened or actual use of force against them, or (2) attempts to flee. Accordingly, because Defendant Lumbard's and Franklin's respective uses of force were not objectively unreasonable under the circumstances, Plaintiff has failed to establish a violation of his Fourth Amendment rights.[2] Therefore, the court finds that Defendants are entitled to qualified immunity, and that Defendants' Motion for Summary Judgment is properly granted, on Plaintiff's excessive force claims.

### B.   *Failure to Intervene*

Plaintiff's second claim also asserts that Defendant Franklin "refused to intervene in the actions which caused Plaintiff's injuries." (Am. Compl. at 6.) An officer may be held liable under § 1983 if she failed to intervene to prevent a fellow officer's use of excessive force. *Mick v. Brewers,* 76 F.3d 1127, 1136 (10th Cir. 1996). However, "establishing a constitutional violation [for excessive force] is a necessary predicate to any claim that an officer failed to intervene." *Mata v. City of Farmington,* 791 F. Supp. 2d 1118, 1156 (D.N.M. 2011) (citing *Hall v. Burke* 12 F. App'x 856, 861 (10th Cir. 2001)). Because Plaintiff has failed to establish a claim for excessive force, he cannot establish a claim for failure to intervene against Defendant

---

[2] Because it finds on the merits that Defendants are entitled to qualified immunity from Plaintiff's excessive force claims, the court does not consider Defendants' alternative argument that Plaintiff's excessive force claims are barred under *Heck v. Humphrey,* 51 U.S. 477, 487 (1994). *See Jiron v. City of Lakewood,* 392 F.3d 410, 413 n.1 (10th Cir. 2004) (noting *Heck* is not jurisdictional and proceeding to evaluate the merits of the plaintiff's claims).

Franklin.  Accordingly, Defendants' Motion for Summary Judgment is properly granted as to this claim.[3]

### C.    *Defendant John Doe*

Plaintiff's only remaining claim alleges that Defendant John Doe used excessive force by stomping Plaintiff's head into the pavement.  (Am. Comp. at 8.)  However, despite the fact that deadlines to amend the pleadings and conduct discovery have long since passed (*see* Courtroom Minutes Re: Prelim. Sched. Conf., Doc. No. 25), Plaintiff has not moved to amend his complaint to identify this defendant.  Furthermore, § 1983 claims are governed by a two-year statute of limitations codified at Colo. Rev. Stat. § 13-80-102.  *Workman v. Jordan,* 32 F.3d 475, 482 (10th Cir. 1994).  More than two years have passed since Defendant Doe's alleged conduct during Plaintiff's arrest on June 26, 2010.  Therefore, the statute of limitations has run with respect to Plaintiff's claim against Defendant Doe.  *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004)

---

[3] Defendants have also construed Plaintiff's Amended Complaint to assert claims against them in their official capacities.  The court disagrees with this construction.  "Where the complaint fails to specify the capacity in which the government official is sued, [the court] look[s] to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability."  *Pride v. Does,* 997 F.2d 712, 715 (10th Cir. 1993).  Here, any official capacity claims would be tantamount to claims against the City and County of Denver ("Denver"), *see Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978), which may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the allegedly tortious acts of its employees, *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998).  Plaintiff's Amended Complaint is devoid of any allegations suggesting that Defendants' actions were taken pursuant to an official municipal policy or custom.  In any event, even gratuitously assuming Plaintiff did intend to name Defendants in their official capacities, any such claim would necessarily fail because Plaintiff has failed to establish a predicate constitutional violation by a Denver police officer.  *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1317-18 (10th Cir. 2002).

(substitution of named defendants for previously unknown John Doe defendants did not relate back under Fed. R. Civ. P. 15(c), and was therefore time-barred, because a lack of knowledge of the intended defendant's identity is not a "mistake concerning the identity of the proper party" under Rule 15(c)(3)(B)); *see also Tapia-Ortiz v. Doe*, 171 F.3d 150, 151-52 (2d Cir. 1999). Accordingly, the court recommends that Plaintiff's claim against Defendant Doe be dismissed *sua sponte*. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("A complaint may be dismissed *sua sponte* under § 1915 based on an affirmative defense – such as statute of limitations – only when the defense is obvious from the face of the complaint and no further factual record is required to be developed.");

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendants' "Motion for Summary Judgment" (Doc. No. 40) be GRANTED, that summary judgment be entered in favor of Defendants Lumbard, Franklin, and Ikeda, and that Plaintiff's claims against Defendant John Doe be dismissed *sua sponte*.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 22nd day of August, 2013.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge